# **EXHIBIT C**

**Nestor Declaration**

01:22400840.2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* <br><br> **EXELCO NORTH AMERICA, INC.,** <br><br> **Debtor.** | Chapter 11 <br><br> Case No. 17-12029 (KG) |
| *In re* <br><br> **EXELCO NV,** <br><br> **Debtor.** | Chapter 11 <br><br> Case No. 17-12030 (KG) |
| *In re* <br><br> **FTK WORLDWIDE MFG. BVBA,** <br><br> **Debtor.** | Chapter 11 <br><br> Case No. 17-12031 (KG) |
| *In re* <br><br> **IDEAL DIAMOND TRADING USA INC.,** <br><br> **Debtor.** | Chapter 11 <br><br> Case No. 17-12032 (KG) |

**DECLARATION OF MICHAEL R. NESTOR IN SUPPORT OF DEBTORS' MOTION**
**FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Michael R. Nestor, hereby declare under penalty of perjury, pursuant to section 1746 of title 28 of the United States Code, as follows:

1. I am a partner in the law firm of Young Conaway Stargatt & Taylor, LLP ("YCST"), with principal offices at Rodney Square, 1000 North King Street, Wilmington, Delaware 19801. YCST is proposed co-counsel to the above-captioned debtors and debtors in

01:22400060.1

possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") commenced on September 26, 2017 (the "Petition Date")

2. I submit this declaration (this "Declaration") in support of the *Motion for a Temporary Restraining Order and Preliminary Injunction* (the "TRO Motion"), filed by the Debtors contemporaneously herewith, and in conjunction with the *Declaration of Philippe Van den Broecke in Support of Debtors' Motion for Temporary Restraining Order and Preliminary Injunction* (the "Van den Broecke Declaration").

3. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the matters set forth herein and in consultation with attorneys from Hughes Hubbard & Reed LLP, as well as information received from counsel to the Debtors in Belgium. I am over eighteen (18) years of age and I am authorized to submit the Declaration on behalf of the Debtors. If called upon to testify, I could and would competently testify to the facts set forth herein from my own personal knowledge, except as otherwise stated.

A. **Background Regarding KBC Bank and Imminent Harm to Debtors' Business Operations and Restructuring Efforts**

4. The Debtors commenced the Chapter 11 Cases to, in part, enjoin KBC Bank NV ("KBC") from continuing to pursue the liquidation of Exelco NV, a Debtor in these Chapter 11 Cases, by taking action before the Antwerp Commercial Court located in Belgium (such proceedings, the "ACE Proceedings"). Indeed, the only relief that the Debtors have sought in these Chapter 11 Cases since the Petition Date was required because the Debtors determined that it was necessary to confirm for all creditors—and KBC in particular—that the automatic stay enjoins such parties from pursuing remedies against the Debtors absent relief from the Court in these Chapter 11 Cases. In furtherance thereof, the Debtors obtained entry of that certain *Order (I) Enforcing Sections 362 and 365 of the Bankruptcy Code and (II) Confirming the Debtors'*

*Authority with Respect to Postpetition Operations* [Docket No. 5] (the "Automatic Stay Order") on September 28, 2017, and, as set forth in the Van den Broecke Declaration, immediately shared a copy of the Automatic Stay Order with KBC and its counsel.

5. As detailed in the Van den Broecke Declaration, the Debtors also provided KBC and its counsel with a letter from the Debtors' co-counsel, Katie Coleman of Hughes Hubbard & Reed LLP, regarding the imposition of the automatic stay and consequences flowing therefrom.

6. The debtors are seeking entry of the TRO to stop KBC from continuing to violate the automatic stay by pursuing relief in the Belgian Court. To successfully service the Debtors' customers and maintain operations postpetition, as well as preserve their ability to successfully restructure and maximize value for the estates and all interested parties, the Debtors' assets in Belgium must remain intact and under their control. I submit that the actions taken by KBC, as set forth in the Van Den Broecke Declaration, are attempts to undermine the Debtors' ability to maximize value for all interested parties and, in all likelihood, cause the immediate wind-down of the Debtors' operations. Accordingly, and for the reasons explained below, the Debtors go-forward prospects are in imminent danger of being irreparably harmed, and given the limited recourse at their disposal, the Debtors were forced to file the TRO Motion and seek entry of a temporary restraining order (the "TRO") from the Court prohibiting KBC from taking further action against the Debtors' assets in Belgium, including pursuing relief from the Antwerp Commercial Court.

7. If KBC is granted the relief it seeks from the Antwerp Commercial Court, it my understanding that Debtor Exelco NV's significant assets may be seized and, ultimately, liquidated. I submit that such a result—which would strip the Debtors of the ability to operate on

a postpetition basis—would cause irreparable damage to the Debtors and their estates given the nature of the Debtors' business and the needs and expectations of their customers and vendors. The relief sought will simply enforce the automatic stay, which KBC has already knowingly violated on several occasions.

8.   Having reviewed the Van den Broecke Declaration and conferred with my co-counsel at Hughes Hubbard & Reed LLP regarding communications with KBC's Belgian counsel, this Declaration certifies that the Debtors and their counsel have repeatedly made efforts to convey the impact of the Automatic Stay Order and the commencement of the Chapter 11 Cases on KBC, and made good faith attempts to prompt KBC to stop pursuing remedies in the Belgian court, thereby violating the automatic stay. Because KBC's counsel has failed to confirm that it will cease taking affirmative steps to liquidate Debtor Exelco NV's assets notwithstanding the pending Chapter 11 Cases, I submit that a TRO should be entered without KBC being given an opportunity to be heard in opposition to the instant relief sought by the Debtors.

9.   Finally, given the time difference between Delaware and Belgium and that the Debtors' Belgian counsel advises that the Belgian court is expected to act by noon Antwerp time on Friday, September 29, 2017 (the "Belgian Hearing"), I submit that entry of a TRO is appropriate without a hearing before the Court, and it is imperative that the Debtors be positioned to present the TRO to KBC's counsel and the Belgian court, as appropriate, before the Belgian Hearing moves forward.

10.   For the reasons explained herein, if KBC's activities are not immediately abated, I believe that the Debtors are at imminent risk of losing their ability to successfully

restructure and fashion a resolution of these Chapter 11 Cases that is in the best interest of all parties.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

                */s/ Michael R. Nestor*
                Michael R. Nestor

Executed this 28th day of September 2017